The document below is hereby signed.

Signed: January 16, 2015



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                              )
                                   )
STEPHEN THOMAS YELVERTON,          )   Case No. 09-00414
                                   )   (Chapter 7)
              Debtor.              )
_____)
                                   )
STEPHEN THOMAS YELVERTON,          )
                                   )
              Plaintiff,           )
                                   )
       v.                          )   Adversary Proceeding No.
                                   )   14-10024
DEBORAH MARM and PHYLLIS           )
EDMUNDSON,                         )   Not for publication in
                                   )   West's Bankruptcy Reporter.
              Defendants.          )
```

MEMORANDUM DECISION AND ORDER DENYING
MOTION TO ALTER OR AMEND DECISION PER FRCP, RULE 59(e)

The plaintiff, Stephen Thomas Yelverton, seeks relief under Federal Rule of Civil Procedure 59(e) from the judgment dismissing this adversary proceeding. The motion must be denied.

I

Yelverton notes that this court dismissed the adversary proceeding on the merits "before the Article III District Court

had acted on a pending Motion for Withdrawal of the Reference to the Bankruptcy Court." However, District Court Local Bankruptcy Rule 5011-2(c) provides in relevant part that "[t]he filing of a motion to withdraw the reference does not stay proceedings in the Bankruptcy Court."

II

Yelverton argues that this court (as opposed to the district court) lacked authority to decide the motion to dismiss. I treated the motion to dismiss as a core proceeding that I was authorized to decide as a core proceeding under 28 U.S.C. § 157(b)(1). As I noted in granting the motion to dismiss:

> However, the issue is largely academic because review on appeal by the district court of the Rule 12(b)(6) dismissal order, a review of a question of law, will be *de novo* just as would be review under 28 U.S.C. § 157(c)(1) of proposed findings of fact and conclusions of law recommending dismissal under Rule 12(b)(6).

Mem. Op. at 46. The judgment dismissing the adversary proceeding provided:

> If the district court determines on appeal that the bankruptcy court was not authorized to decide the motion to dismiss and to enter this judgment, the bankruptcy court's Memorandum Decision of this date constitutes the bankruptcy court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

*Judgment* at 2. Either way, the district court's review would be *de novo*, so Article III would not be offended. *See Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 134 S. Ct. 2165, 2175 (2014) (Article III was not offended by a district

court's affirming a summary judgment ruling of the bankruptcy court, under a *de novo* standard of review, because the appellant "received the same review from the District Court that it would have received if the Bankruptcy Court had treated the fraudulent conveyance claims as non-core proceedings under § 157(c)(1)."). Accordingly, the issue will be academic even if the District Court decides that this court lacked authority to issue a final judgment subject to review only by way of appeal.

### III

Yelverton nevertheless contends that if Article III of the Constitution barred me from entering a final judgment dismissing this adversary proceeding, I lacked authority to issue proposed findings of fact and conclusions of law.  He asserts that precisely that issue is pending before the Supreme Court in its review of *Wellness Intern. Network, Ltd. v. Sharif*, (7th Cir. 2013), cert. granted, No. 13-935, 134 S.Ct. 2901 (July 1, 2014). This is a frivolous contention.

The issue is *not* pending before the Supreme Court in *Sharif*. Question 4 of the *Sharif* petition, 2014 WL 466827 (Feb. 5, 2014), was:

> 4. Whether bankruptcy courts have the statutory authority to submit proposed findings of fact and conclusions of law for de novo review by a district court in a "core" proceeding under 28 U.S.C. § 157(b).

But the petition for a writ of certiorari was "granted limited to Questions 1 and 3 presented by the petition."  *Sharif* order

granting cert., 134 S.Ct. 2901 (July 1, 2014).  The question posed by Question 4 (the question Yelverton raises) was already decided in *Arkison*.[1]  In *Arkison*, the Court held that in such a proceeding (a core proceeding in which Article III bars the bankruptcy judge's issuing a final decision to be reviewed by way of appeal), "[t]he statute permits [the] claims to proceed as non-core within the meaning of § 157(c)."  134 S. Ct. at 1273.

IV

The *Memorandum Decision re Motion to Dismiss*, at 41-46, explained at length why this court *was* authorized to enter a judgment dismissing this adversary proceeding, and without

---

[1] The questions upon which the Court did grant certiorari were:

   1. Whether the presence of a subsidiary state property law issue in a 11 U.S.C. § 541 action brought against a debtor to determine whether property in the debtor's possession is property of the bankruptcy estate means that such action does not "stem[] from the bankruptcy itself" and therefore, that a bankruptcy court does not have the constitutional authority to enter a final order deciding that action.

   3. Whether Article III permits the exercise of the judicial power of the United States by the bankruptcy courts on the basis of litigant consent, and if so, whether implied consent based on a litigant's conduct is sufficient to satisfy Article III.

*Sharif* petition, 2014 WL 466827 (Feb. 5, 2014).  Neither of those issues is present in this proceeding.

altering the substance of that discussion, I recast the analysis in a slightly different fashion here.

A.

*Statutory Authority to Enter Final Judgment*

Yelverton contends that Congress has not statutorily vested authority in this court to decide his claims in this adversary proceeding. However, pursuant to 11 U.S.C. § 157(b)(1), Congress has authorized this court to hear and determine "core proceedings arising under title 11, or arising in a case under title 11," and pursuant to 28 U.S.C. § 157(b)(2), such proceedings include but are not limited to a broad array of proceedings, including, for example, "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

Yelverton's claims were a "core proceeding" that this court was authorized to hear and decide. First, Yelverton's claims regarding violations of the automatic stay of 11 U.S.C. § 362(a) arose under title 11 and thus adjudication of those claims was an "arising under title 11" core proceeding.

Second, Yelverton's remaining claims alleged violations of the RICO statute that arose in the administration of the estate, and alleged harm to the estate arising from the violations. Each of the predicate acts alleged by Yelverton was related to the negotiation of the trustee's settlement agreement with Yelverton's sisters and the approval of that settlement agreement

5

by the court, and alleged that the bankruptcy estate was damaged as a result of the predicate act. Accordingly, the claims were core claims as claims "concerning the administration of the estate" within the meaning of § 157(b)(2)(A).

Moreover, the motion to dismiss the proceeding presented issues regarding:

- Yelverton's lack of standing to pursue the claims because they belong to the estate;
- the defendants' right, arising from this court's approval of the settlement, to be treated as having been released from the claims pursuant to the court's approval of the settlement;
- the defendants' right to invoke the preclusive effects of the court's order approving the settlement pursuant to the doctrines of res judicata and collateral estoppel as a bar to Yelverton's pursuit of the proceeding; and
- Yelverton's vexatious attempt to circumvent the settlement approved by the court via bringing this frivolous adversary proceeding against the defendants.

The issue of lack of standing based on the Bankruptcy Code provision vesting authority to sue in the trustee was a "core proceeding" as one "arising under title 11" within the meaning of § 157(b)(1). The issues regarding the preclusive effect of the

settlement constituted a "core proceeding" as presenting issues "arising in the case" within the meaning of § 157(b)(1), and as addressing "matters concerning the administration of the estate" within the meaning of § 157(b)(2)(A).

B.

*Constitutional Authority to Decide
that Yelverton is Barred From Pursuing the RICO Claims*

Yelverton also contends that Article III of the Constitution barred this court's deciding the motion to dismiss his RICO claims. The court decided that Yelverton was barred from pursuing his RICO claims, regardless of whether those claims would have merit if he was *not* barred from pursuing them. Article III of the Constitution did not bar this court from addressing, in that regard, these issues:

- Yelverton's lack of standing to pursue the RICO claims;
- the effect, on those RICO claims, of the release of claims against the defendants pursuant to the settlement approved by this court;
- the res judicata and collateral estoppel effects of the order approving the settlement; and
- the need for this court to put an end to Yelverton's continued vexatious attempts to circumvent the order approving the settlement.

The judgment dismissed the adversary proceeding pursuant to those

7

grounds.  Under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), Article III of the Constitution did not bar this court from entering judgment dismissing this adversary proceeding on those grounds.  As the Court observed in *Stern*, 131 S. Ct. at 2618, "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is **whether the action at issue stems from the bankruptcy itself** or would necessarily be resolved in the claims allowance process." (Emphasis added.)  Here, each of the predicate acts Yelverton alleges for his RICO claims was related to the negotiation of the settlement between the trustee and Yelverton's sisters, and the court's approval of the settlement, and the acts allegedly harmed the estate.  In turn, the grounds for dismissal of Yelverton's RICO claims arise from the preclusive effects of the bankruptcy court's approval of the settlement between Yelverton's sisters and the trustee, and from the Bankruptcy Code's vesting authority in the chapter 7 trustee to pursue the claims for violations of RICO that allegedly damaged the estate.  Those grounds for dismissal "stem[] from the bankruptcy itself" within the meaning of *Stern*.  Accordingly, under *Stern*, Article III did not bar this court from adjudicating that Yelverton is precluded from pursuing

8

the claims.[2]

The propriety of the settlement, and of the trustee's and Yelverton's sisters' negotiation thereof, was determined when the court approved the settlement. Yelverton has not contended, and could not seriously contend, that Article III barred this court

---

[2] A more difficult issue is whether Article III would have barred this court from dismissing this adversary proceeding based on Yelverton's failure to plead any valid RICO claim (instead of issuing proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1)). Compare *Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs., Inc.)*, 457 B.R. 314, 319–20 (Bankr. D. Del. 2011) (state-law claims, which arose out of actions taken in the bankruptcy case, stemmed from the bankruptcy itself within the meaning of *Stern*, because the claims would not exist but for the bankruptcy case, and because they "relate[d] entirely to matters integral to the bankruptcy case") with *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 912 (7th Cir. 2011) (court ruled that "Article III prohibit[s] Congress from giving bankruptcy courts authority to adjudicate claims that [go] beyond the claims allowance process," and barred the bankruptcy court from deciding the claim even though it "arose in" the bankruptcy case and was thus a core proceeding).

That issue is moot for two reasons. First, review will be de novo if the sufficiency of the RICO claims are reviewed by way of appeal and also will be de novo if the District Court reviews the bankruptcy court's ruling regarding the sufficiency of the RICO claims as proposed findings of fact and conclusions of law. Second, Article III of the Constitution did not bar this court's entering a judgment dismissing this adversary proceeding based on lack of standing and based on the preclusive effects of the settlement. If the judgment of dismissal is affirmed on those grounds, it will not be necessary for the District Court to reach the issue of the sufficiency of the RICO claims.

For the sake of addressing all issues, however, the court analyzed not only Yelverton's lack of standing and the preclusive effects of the settlement, but also the issue of whether Yelverton failed to plead any valid RICO claim.

from entering the order approving the settlement.[3]  Article III of the Constitution, as interpreted in *Stern*, does not preclude the bankruptcy court from enforcing an order that it had authority to issue.  *See In re Christ Hosp.*, No. 14-472 (ES), 2014 WL 4613316, at *9-10 (D.N.J. Sept. 12, 2014) (*Stern* did not bar bankruptcy court from enforcing a sale order); *Moore v. Paladini (In re CD Liquidation Co.)*, 462 B.R. 124, 136 (Bankr. D. Del. 2011) (finding *Stern* inapplicable to injunction motion to enforce terms of a confirmed plan, as the motion "involve[d] the

---

[3]  As noted in *Carr v. Jacobs (In re New Century TRS Holdings, Inc.)*, Civ. No. 12–288–SLR, 2013 WL 1196605, at *3 n.2 (D. Del. Mar. 25, 2013):

> Approval of a settlement is "core" to the bankruptcy code.  *See In re WorldCom, Inc.*, 347 B.R. 123, 138 (Bankr. S.D.N.Y. 2006) (finding jurisdiction to approve settlement agreement); *In re Harris*, 590 F.3d 730 (9th Cir. 2009) (explaining that matters involving the implementation of the parties' settlement agreement was within bankruptcy court's core jurisdiction). *Stern*, 131 S. Ct. 2594, and its narrow limit on bankruptcy court jurisdiction does not extend to the compromise and settlement of a claim which is "indisputably property of a debtor's estate."  *In re Ambac Fin. Group, Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011) (overruling *Stern v. Marshall*-based objections and approving settlement and release of claims under Fed. R. Bankr. P. 9019); *see also In re Madoff*, 848 F. Supp. 2d 469, 484 (S.D.N.Y. 2012) (finding that Stern did not impact the bankruptcy court's authority to approve a settlement agreement).

*See also Realan Inv. Partners, LLLP v. Meininger (In re Land Res., LLC)*, 505 B.R. 571, 580 (M.D. Fla. 2014) ("Courts considering *Stern*'s reach have uniformly concluded that *Stern* had little impact on bankruptcy courts' authority to enter final orders and judgments on motions to approve a settlement pursuant to Bankruptcy Rule 9019.").

most basic and intrinsic authority of this or any court—the authority to enforce its order"). *See also River Entm't Co. v. Buncher Co. (In re River Entm't Co.)*, 467 B.R. 808, 812 (Bankr. W.D. Pa. 2012) (holding that *Stern* did not bar bankruptcy court's enforcement and interpretation of its own consent order). Here, the claims that were the subject of the settlement may have been claims that the bankruptcy court could not have decided under *Stern*. But *Stern* did not bar this court's entering the order approving the settlement (whose release terms were broad enough to include the RICO claims now asserted), and, in turn, *Stern* does not bar this court's enforcing that order by dismissing this adversary proceeding. *See White v. Kubotek Corp.*, 487 B.R. 1, 10 (D. Mass. 2012) (*Stern* did not bar bankruptcy court's entry of a final order on a fraudulent transfer claim because the order was issued to enforce the court's prior sale order).

Moreover, *Stern* does not bar this court's dismissing the RICO claims on the alternative grounds of lack of standing. The RICO claims are property of the estate, and *Stern* cannot be read as precluding a bankruptcy court from dismissing an adversary proceeding asserting such claims when only the trustee is the authorized representative of the estate.

In any event, review on appeal by the district court of the Rule 12(b)(6) dismissal order, a review of a question of law, will be *de novo* just as would be review under 28 U.S.C.

11

§ 157(c)(1) of proposed findings of fact and conclusions of law recommending dismissal under Rule 12(b)(6).  *De novo* review by way of appeal will accord Yelverton all of the Article III review to which he is entitled.  *Schultze v. Chandler (In re Colusa Mushroom, Inc.)*, 765 F.3d 945, 948 n.1 (9th Cir. 2014).

V

An issue related to the issue of statutory authority for the bankruptcy court to decide Yelverton's claims is the issue of subject matter jurisdiction.[4]  I neglected to address that issue in the prior decision.

With exceptions of no relevance here, § 1334(b) provides that "the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  In turn, this court hears a proceeding (via referral from the district court under District Court Local Bankruptcy Rule 5011-1) only when the proceeding falls within that subject matter jurisdiction.  There was subject matter jurisdiction over both of Yelverton's sets of claims.

A.

First, there was both "arising in" and "arising under" subject matter jurisdiction over Yelverton's claims regarding

---

[4] Yelverton's amended complaint includes no allegation regarding the grounds for the court's jurisdiction as required by Fed. R. Bankr. P. 7008 and Fed. R. Civ. P. 8(a).

violation of the automatic stay, and they were plainly core proceedings under § 157(b)(1).

B.

Second, there was "arising in" subject matter jurisdiction over the RICO claims as claims growing out of the administration of the estate, and, as "matters concerning the administration of the estate," they are core proceedings that this court was authorized by § 157(b)(2)(A) to decide.  *See Schultze*, 765 F.3d at 948-50 (action against bankruptcy professional was a core proceeding that arose in bankruptcy case*);  Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009) ("[W]e agree with our sister circuits that malpractice claims against court-appointed professionals stemming from services provided in the bankruptcy proceeding are inseparable from the bankruptcy context.").

Of course, "an 'arising in' proceeding is one that must not only arise from events in the bankruptcy case but that by its nature is of an 'administrative' character because it requires a disposition in the bankruptcy case in order for the bankruptcy case to be administered."  *Va. Hosp. Ctr.-Arlington Health Sys. v. Akl (In re Akl)*, 397 B.R. 546, 550 (Bankr. D.D.C. 2008).  *See also In re White*, 2011 WL 4368390, *2 (Bankr. D.D.C. Sept.19, 2011) (bankruptcy court would likely lack subject matter jurisdiction over car lienor's request to compel debtor to

13

surrender car even though the debtor's refusal arose during the bankruptcy case).  Here, however, the claims both arose in the case and require disposition in the bankruptcy case as part of the administration of the case.  The claims asserted concern acts that allegedly harmed the estate, and a bankruptcy court obviously has subject matter jurisdiction to address claims regarding harm to the estate.  In addition, administering the bankruptcy case includes assuring that only the trustee may sue on claims that are property of the estate; assuring that the terms of the settlement incorporated by the court's order approving the settlement are fully protected and not frustrated; and assuring that the court's approval of the settlement is accorded the preclusive effects to which it is entitled.

C.

Even if facially Yelverton's complaint had not revealed a nexus to the bankruptcy case, the court would have had subject matter jurisdiction to enter the judgment dismissing the RICO claims in this adversary proceeding.  The defendants could have pursued a separate adversary proceeding for a declaration that Yelverton is barred from pursuing his RICO claims, and this court would have had "arising in" subject matter jurisdiction, as part of the administration of the bankruptcy case (as discussed in part B, above), both to declare that Yelverton's claims are barred for lack of standing and pursuant to the settlement, and

14

to implement that declaration by dismissing the adversary proceeding.  Instead, the defendants pursued their contentions in that regard pursuant to the motion to dismiss this adversary proceeding.  The court agreed with their contentions, declaring that Yelverton was barred from pursuing the claims, and accordingly dismissed Yelverton's claims with prejudice. Yelverton did not oppose the entry of a decision adjudicating the defendants' contentions on the basis that a separate adversary proceeding was required.  The requirement of an adversary proceeding complaint under Fed. R. Bankr. P. 7001 is not jurisdictional, and the right to insist upon that procedural requirement can be waived or forfeited.  *See In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990).  *See also Tully Constr. Co., Inc. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.)*, 72 F.3d 1260, 1264-65 (6th Cir. 1996); *Village Mobile Homes, Inc. v. First Gibraltar Bank (In re Village Mobile Homes, Inc.)*, 947 F.2d 1282, 1283 (5th Cir. 1991); *Hijjawi v. Five N. Wabash Condo. Ass'n*, 495 B.R. 839, 844–45 (N.D. Ill. 2013).  In any event, the lack of an adversary proceeding complaint was harmless error under Fed. R. Bankr. P. 9005 and is not a ground for vacating the judgment of dismissal.  *Tully Constr. Co.*, 72 F.3d at 1264–65; *Korneff v. Downey Reg'l Med. Ctr.-Hosp., Inc. (In re Downey Reg'l Med. Ctr.-Hosp., Inc.)*, 441 B.R. 120, 127-28 (9th Cir. BAP 2010); *McNeil v. Drazin*, 499 B.R.

15

484, 490 n.15 (D. Md. 2013).

## VI

In his reply, Yelverton raises a new argument regarding dismissal of the adversary proceeding based on lack of standing. In dismissing the adversary proceeding, the court ruled that Yelverton lacked standing because the trustee, Webster, as representative of the estate, is the party with standing to sue for harm to the estate. Yelverton argues that Webster would have a conflict of interest in pursuing the claims; however, that does not change the fact that Webster is the representative of the estate unless and until he is no longer the trustee, and that whoever is the trustee, not Yelverton, is the entity with standing to represent the estate.

## VII

Pursuant to the foregoing, it is

ORDERED that Yelverton's *Motion to Alter or Amend Decision per F.R.C.P., Rule 59(e)* (Dkt. No. 48) is DENIED and this adversary proceeding remains dismissed with prejudice.

[Signed and dated above.]

Copies to: All counsel of record.